IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-1850-WJM-SBP

ASHLEY BEARD,

 Plaintiff,

v.

BRINK'S INC.,

 Defendant.

---

## ORDER OVERRULING OBJECTION AND ADOPTING RECOMMENDATION IN FULL

---

Before the Court is Defendant Brink's Inc.'s ("Defendant") objection (ECF No. 112) to United States Magistrate Judge Susan Prose's recommendation ("Recommendation") (ECF No. 102) that the Court grant in part and deny in part its motion for summary judgment (ECF No. 76).  Plaintiff Ashley Beard ("Plaintiff") filed a response to Defendant's objection but did not file an objection of her own to the Recommendation.  (ECF No. 115.)

For the following reasons, the Court overrules Defendant's objection and adopts the Recommendation in full.

### I. PERTINENT BACKGROUND

The parties are familiar with the pertinent background of this case from, among other sources, the Recommendation.  (ECF No. 102 at 2–9.)  Noting that neither party disputes the facts listed therein, the Court incorporates that background here and adds the following pertinent facts.

Plaintiff asserts claims against Defendant under the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964.  (*Id.* at 8.)  Specifically, she asserts claims of failure to accommodate, discrimination, hostile work environment, and retaliation under the ADA, and racial discrimination under Title VII.  (*Id.*)  The Recommendation states that the Court should grant Defendant's summary judgment motion with respect to the hostile work environment, retaliation, and racial discrimination claims, and deny the motion with respect to the failure to accommodate and discrimination claims.  (*See generally id.*)  The Recommendation also states that the Court should deny Plaintiff's cross summary judgment motion with respect to all these claims.  (*Id.* at 28.)

Since Plaintiff, now represented by counsel,[1] did not file an objection to the Recommendation, the Court may adopt the unobjected-to portions of the Recommendation if it is satisfied that there is no clear error on the face of the record.  *Henard v. Albers*, 2024 WL 1858501, at *4 (D. Colo. Apr. 29, 2024) (citing *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)).  Seeing no clear error, the Court adopts those portions of the Recommendation, leaving only Plaintiff's failure to accommodate and discrimination claims intact.

Defendant objects to the Recommendation insofar as it denies summary judgment as to the failure to accommodate and discrimination claims.  (*See generally* ECF No. 112.)  As to the failure to accommodate claim, the Recommendation concluded that Plaintiff made a prima facie showing of the claim's elements—that is, Plaintiff (1) was disabled, (2) was otherwise qualified, (3) requested a reasonable

---

[1] Plaintiff proceeded *pro se* at the summary judgment stage of this action.

2

accommodation, and (4) was denied the accommodation. (*Id.* at 14–22 (citing *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020).) Defendant focuses only on the third element, arguing that Plaintiff did not request any accommodation nor engage in the interactive process as required under pertinent caselaw. (ECF No. 112 at 7.) On these scores, the Recommendation found that "the facts in the record here would allow a jury to conclude that Ms. Beard asked Brink's for a reasonable accommodation in the form of delaying her return to work a mere eight days—from June 7 to June 15, 2021—until she could confer with her workers' compensation physician about an accommodation that would allow her to resume work at Brink's." (ECF No. 102 at 19.) The Recommendation further found that, while Plaintiff "shares some blame for the interactive process stalling out," the record nonetheless supports her position that "the interactive process broke down when Brink's insisted that Ms. Beard return to work on June 7, 2021." (*Id.* at 20.)

The Recommendation also concluded that Plaintiff made a prima facie showing of the elements of her disability discrimination claim—that is, Plaintiff was (1) disabled, (2) otherwise qualified, and (3) discriminated against because of her disability. (*Id.* at 22 (citing *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018).) Specifically, the Recommendation found that the record supports Plaintiff's position that Defendant discriminated against her by failing to accommodate her disability and that Defendant's reasons for not accommodating her were pretextual. (*Id.* at 22–25.) Defendant again focuses only on the third element, arguing that the Recommendation erred as a matter of law by concluding that its alleged failure to accommodate Plaintiff's disability qualifies as discrimination under the ADA. (ECF No. 112 at 8 ("[T]he Recommendation's

3

conclusion that Beard satisfied the adverse action prong of her disability discrimination claim based on Brink's alleged failure to accommodate Beard is erroneous as a matter of law.").)  Defendant also argues that "the summary judgment record is utterly devoid of evidence of pretext." (*Id.* at 8–9.)

## II. STANDARD OF REVIEW

Where, as here, a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires the district judge to "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to."  *Henard*, 2024 WL 1858501, at *4  (quoting Fed. R. Civ. P. 73(b)(3)).  An objection to a recommendation is properly made if it is both timely and specific.  *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Id.*  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

Because Defendant adequately objects to the Recommendation's conclusions that summary judgment is not appropriate on Plaintiff's failure to accommodate and disability discrimination claims, the Court reviews those conclusions de novo.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v.*

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, courts must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## IV. ANALYSIS

### A.   Failure to Accommodate

Defendant contends that the Recommendation erred by concluding that Plaintiff made a prima facie showing as to the third element of her failure to accommodate claim—*i.e.*, that she requested a reasonable accommodation and engaged in the interactive process.  (ECF No. 112 at 2.)  The Court discerns no error.

"The ADA prohibits a 'covered entity' from discriminating 'against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'"  *Aubrey*, 975 F.3d at 1005 (quoting 42 U.S.C.A. § 12112(a)).  "The ADA defines 'discriminate against a qualified individual on the basis of disability' to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a

5

disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'" *Aubrey*, 975 F.3d at 1005.

As mentioned, "there are generally four elements" a plaintiff must "show to establish a prima facie failure-to-accommodate claim: (1) she was disabled, (2) she was otherwise qualified, (3) she requested a plausibly reasonable accommodation, and (4) the [defendant] refused to accommodate her disability." *Id.*; *Herrick v. Vail Corp.*, 2024 WL 4360502, at *4 (10th Cir. Oct. 1, 2024). The Tenth Circuit has said that "[e]stablishing a prima facie claim is not onerous." *Aubrey*, 975 F.3d at 1005 (citing *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015)).

If the plaintiff establishes these elements, the burden shifts to the defendant "to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer."[2] *Lincoln*, 900 F.3d at 1204 (internal quotation marks omitted). A reasonable accommodation claim is not designed to "probe the subjective intent of the employer" but instead to "determine whether the various parties have advanced sufficient evidence to meet their respective traditional burdens to prove or disprove the reasonableness of the accommodations offered or not offered." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 n.12 (10th Cir. 1999) (en banc); *see also Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017).

---

[2] Defendant does not argue in the objection that it satisfied either of these elements. (*See generally* ECF No. 112.)

6

A reasonable accommodation is one that "presently, or in the near future, enable[s] the employee to perform the essential functions of h[er] job." *Davis v. PHK Staffing LLC*, 2023 WL 8757073, at *3 (10th Cir. Dec. 19, 2023) (citation omitted). "The determination of whether a requested accommodation is reasonable must be made on the facts of each case taking into consideration the particular individual's disability and employment position." *Punt*, 862 F.3d at 1050 (internal quotation marks omitted).

Applying these principles, the Court adopts the Recommendation's view that Plaintiff's request to return to work after June 15, 2021—on which date Plaintiff was scheduled to meet with her doctor and discuss potential work restrictions—was a request for a reasonable accommodation. (ECF No. 102 at 6, 19.) "It is well-settled that a request for leave may lead to a 'reasonable' accommodation." *Id.* at 1051. And the Tenth Circuit has concluded that a request for more time to meet with a doctor to discuss potential work restrictions is an accommodation request in itself. *See Aubrey*, 975 F.3d at 1011 (concluding that the plaintiff's "request in mid-April for some additional time to gather updated medical information as to when her doctors would release her to return to work was a plausible reasonable accommodation").

Defendant does not address this applicable law and instead stresses that Plaintiff "never submitted any accommodation requests in response to [its] overtures." (ECF No. 112 at 5.) While it is true that Plaintiff did not supply Defendant with a list of specific accommodations before Defendant scheduled her to work on June 7, 2021, this fact is inapposite because Plaintiff's request for more time to confer with her doctor was itself an accommodation request. *Compare Freeman v. City of Cheyenne*, 2024 WL 464069, at *3 (10th Cir. Feb. 7, 2024) ("We may assume Freeman's request for additional leave

7

was sufficient to trigger the City's responsibility to engage in the interactive process . . . .") *with Hurt v. Sch. Dist. No. 1 in Cnty. of Denver, Colorado*, 664 F. Supp. 3d 1227, 1240 (D. Colo. 2023) (granting summary judgment for defendant where plaintiff did not ask for more time to ask for a reasonable accommodation but instead refused "to provide the documentation needed for her requested accommodation") *and Mares v. Colorado Coal. For Homeless*, 2021 WL 5811232 (10th Cir. Dec. 7, 2021) (affirming summary judgment where plaintiff did not "initiate any communications" about her medical information).  Thus, the Court adopts the Recommendation's view that Plaintiff made a prima facie showing that she requested a reasonable accommodation.

This accommodation request, which the Court concludes was reasonable (over no objection from Defendant), "triggered the requirement that Brink's engage in the interactive process contemplated by the ADA."  (ECF No. 102 at 19.)  The interactive process requires both parties "to engage in good faith" to determine a plaintiff's limitations and consider whether the requested accommodations would enable the plaintiff to return to work.  *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1315–16 (10th Cir. 2017); *see also Smith*, 180 F.3d at 1172 ("The interactive process is typically an essential component of the process by which a reasonable accommodation can be determined.").

"While '[t]he exact shape of this interactive dialogue will necessarily vary from situation to situation and no rules of universal application can be articulated[,]' '[t]he interactive process [necessarily] includes good-faith communications between the employer and employee.'"  *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004) (quoting *Smith*, 180 F.3d at 1172–73).  "This is imperative because each side will

8

possess different information, all of which is critical to determining whether there is a reasonable accommodation that might permit the disabled employee to perform the essential functions of her job." *Id.*

The Recommendation concluded that "a jury could find that Brink's failed to engage in an interactive process with Ms. Beard to determine if there was a reasonable accommodation that would have enabled her to perform the essential functions of a job at Brink's." (*Id.* at 20.) The Recommendation reasoned that the evidence could be construed to show that "the interactive process broke down when Brink's insisted that Ms. Beard return to work on June 7, 2021—disregarding her request to defer her return-to-work date for a few days until she could see her physician and present to Brink's specific information concerning what tasks she could perform and what accommodations she would need to perform them." (*Id.*)

Defendant disagrees with this characterization of the evidence, insisting that "Beard caused the breakdown in the interactive process." (ECF No. 112 at 7.) In support, it asserts that, after Plaintiff requested time to meet with her doctor on June 15, 2021, and failed to report for work on June 7, 2021, Defendant nevertheless reached out to Plaintiff three times thereafter on June 30, July 6, and July 22, 2021, "asking her to submit any accommodation requests she wished Brink's to consider." (*Id.* at 5.) Defendant also points out that it did not terminate Plaintiff's employment "until over two years later (at her request)." (*Id.*) (emphasis omitted).

In the Court's view, Defendant presents strong evidence refuting the notion that it caused the interactive process to break down. The Recommendation acknowledged as much. (ECF No. 102 at 20 (recognizing that Plaintiff "shares some blame for the

9

interactive process stalling out").)  But, as the Recommendation also correctly acknowledged, it is not the Court's job to weigh the evidence at the summary judgment stage (or any other stage, given that this case is set to be tried by a jury).  Rather, the Court must examine the record and decide whether the evidence, when viewed in the light most favorable to the non-moving party, plausibly supports their theory of the case.  *Adler*, 144 F.3d at 670.

The record evidence sufficiently does so.  A reasonable jury could find that Defendant ended the interactive process—at least at one point in time—by scheduling Plaintiff to work at her "former position"[3] on June 7, 2021, even though Defendant knew that Plaintiff could only return to work "with restrictions."  (*Id.*)  Plaintiff "claims that Rice-Minor verbally agreed to [Plaintiff] returning to work after she had seen [her doctor] on June 15."  (ECF No. 76-2 at 110.)  And Plaintiff testified at her deposition that her supervisor told her that she had been scheduled to work on June 7, 2021, "even though Brink's knew that Ms. Beard 'was going to get those restrictions put back in place' on June 15."  (ECF No. 102 at 6.)  Plaintiff further testified that her supervisor told her before her June 7, 2021 shift that she did not "think [Defendant will] let you return with restrictions."  (*Id.* at 4.)  In the Court's view, these circumstances are enough to satisfy the third element of Plaintiff's failure to accommodate claim.

---

[3] The Recommendation notes that "the summary judgment record is marked by a lack of clarity" as to "what position Brink's had offered Ms. Beard in May/June 2021."  (ECF No. 102 at 16.)  Although this ambiguity is not mentioned by the parties—which suggests to the Court that Defendant takes no issue with this point at the summary judgment stage—the Court observes that Rice-Minor's June 30, 2021 letter inquired into whether and when Plaintiff would "return to [her] former position."  (ECF No. 1-5 at 3.)  Viewing the evidence in the light most favorable to Plaintiff, this "former position" reference could mean the clerk vault position—*i.e.*, the position that twice caused Plaintiff to injure her back.

Still, Defendant maintains that Plaintiff "ceased all communications with Brink's" after July 6, 2021, and insisted throughout the interactive process that Defendant "unlawfully" terminated her in April 2021, which suggests that she attempted to "terminate the interactive process quickly to create liability." *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1194 (10th Cir. 2022). (*Id.* at 4.) Defendant argues that, because the duty to engage in the interactive process goes both ways, Plaintiff cannot prevail if she did not do her part. (*Id.* at 3 ("An employee's ADA claim cannot survive summary judgment where her failure to communicate with the employer is the cause of the breakdown in this interactive process.").)

These are worthy arguments to present to a jury. But again, whether Plaintiff engaged in the interactive process remains an open question where, as here, record evidence supports the notion that Plaintiff communicated with Defendant during the year she was on leave and during at least some of the period thereafter. *See id.* ("Here, a jury could conclude that Defendant engaged in the interactive process. But Plaintiff has presented sufficient evidence to create a genuine issue of material fact on whether Defendant fulfilled its responsibilities during the interactive process to work with Plaintiff to identify the type of position that would reasonably accommodate his limitations."). (*See, e.g.,* ECF No. 115 at 6 ("Brink's ignores that during this period, Plaintiff remained proactive and asked to speak to a District Manager about her need for an accommodation and Brink's refused to facilitate her request.").)

Whether a party engaged in the interactive process in good faith is ultimately a fact-intensive inquiry. *Bartee*, 374 F.3d at 916. And while the Court thinks Plaintiff's theory of the case hinges on a rather myopic view of the evidence—indeed, the jury

11

would have to reconcile all other evidence of Defendant's efforts to accommodate Plaintiff's disability from March 2021 through June 2021 to rule in her favor—it is minimally sufficient to survive summary judgment.  See *Wirtz v. Kansas Farm Bureau Servs., Inc.*, 274 F. Supp. 2d 1198, 1202 (D. Kan. 2003) (noting that policy disfavors granting summary judgment in employment discrimination cases, "even in what appears to be [a] relatively weak case"); *Thomas v. Am. Nat'l Prop. & Cas. Co.*, 2017 WL 1077639, at *1 (D. Colo. Mar. 22, 2017) ("Although plaintiff's case may be a weak one, I find that defendant has failed to meet its burden to show that 'there is an absence of evidence to support [Ms. Thomas'] case' and that it is therefore entitled to a summary judgment in its favor.") (citation omitted).

In sum, the Court overrules the objection and adopts the Recommendation in full with respect to the failure to accommodate claim.

### B.  Discrimination

Defendant contends that the Recommendation erred by concluding that Plaintiff made a prima facie showing as to the third element of her discrimination claim—*i.e.*, that Defendant discriminated against Plaintiff because of her disability.  (ECF No. 112 at 7.)  Again, the Court discerns no error.

It is unlawful for an employer to discriminate "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  Where there is no direct evidence of discrimination, courts apply the *McDonnell-Douglas* burden-shifting analysis.  See *Lincoln*, 900 F.3d at 1192.  At the first step of that analysis, a plaintiff must "establish a prima facie case of discrimination by showing (1) that [s]he is disabled within the meaning of the ADA; (2) that [s]he is qualified for the job held or desired; and (3) that [s]he was discriminated against because of h[er] disability."  *Id.* (internal quotation

marks omitted). Like with a failure to accommodate claim, the Tenth Circuit has said that "establishing a prima facie" disability discrimination claim "is not onerous." *Osborne*, 798 F.3d at 1266.

Thus, there is significant overlap between the elements of a failure to accommodate claim and a discrimination claim. Importantly, however, "[d]ifferent than her failure-to-accommodate claim, to recover on her discrimination claim, [Plaintiff] must prove that [Defendant] acted with a discriminatory animus against her because she had a disability." *Aubrey*, 975 F.3d at 1014; *see also Lincoln*, 900 F.3d at 1204; *Exby-Stolley v. Bd. of Cnty. Commissioners*, 979 F.3d 784, 794 (10th Cir. 2020) ("To present a prima facie failure to accommodate claim, the first two elements remain the same, while the third is met by showing that 'an employer [did not] take reasonable steps to [accommodate the employee].'") (citation omitted).

Defendant again challenges only the third element of Plaintiff's discrimination claim, raising two arguments. First, Defendant argues that the Recommendation erred by concluding that Defendant's alleged failure to accommodate Plaintiff's disability qualifies as discrimination under the ADA. (ECF No. 112 at 8.) Second, Defendant argues that "the summary judgment record is utterly devoid of evidence of pretext." (*Id.* at 8–9.)

Like the Recommendation, however, the Court is satisfied that Plaintiff has met her low burden of making a prima facie showing that Defendant discriminated against her because of her disability. Contrary to Defendant's first argument, the Recommendation properly relied on pertinent authorities in concluding that an employer's failure to accommodate constitutes discrimination under the ADA.

13

Foundationally, the ADA expressly defines "discrimination" to include "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual."  42 U.S.C. § 12112(b)(5)(A).

Consistent with this statutory foundation, the Tenth Circuit has allowed an employee's discrimination claim to proceed where the basis of her claim was the employer's alleged failure to reasonably accommodate her disability.  *See Aubrey*, 975 F.3d at 1014 (concluding that the plaintiff "satisfied [the third element]" immediately after quoting the ADA's definition of discrimination as including failing to make reasonable accommodations); *see also Norwood v. United Parcel Serv., Inc.*, 57 F.4th 779, 786 (10th Cir. 2023) ("To discriminate against a qualified individual on the basis of disability includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . .") (quoting § 12112(b)(5)(A)); *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1048 (10th Cir. 2011) ("[A]n employer can unlawfully 'discriminate' against an employee by failing to 'mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee.'") (citations omitted); *Smith*, 180 F.3d at 1169 ("[A]n employer discriminates against a qualified individual with a disability if the employer fails to offer a reasonable accommodation."); *id.* at 1178 n.12 ("[A] failure to offer a reasonable accommodation to an otherwise qualified disabled employee is unlawful discrimination.").  In light of all this authority, the Court adopts the Recommendation's view that Plaintiff's discrimination claim is permissibly based on Defendant's alleged failure to accommodate her disability.

Defendant's cited caselaw does not convince the Court otherwise.  *Exby-Stolley*

14

held that, unlike a disparate treatment claim, "an adverse employment action is not a requisite element of a failure-to-accommodate claim." 979 F.3d at 792. The decision did not hold the inverse—in other words, it did not hold that a discrimination claim cannot be premised on an employer's failure to accommodate. Nor did *Vanech v. Walsh*, 2022 WL 4010014, at *8 (D. Colo. July 8, 2022), on which Defendant relies. That case held that "a failure to accommodate cannot serve as an adverse action for an ADA [or Rehabilitation Act] *retaliation claim* because it merely restates an underlying failure to accommodate claim." *Id.* (quoting *Hurley v. Fuchs*, 2021 WL 4290134, at *8 (D.N.M. Sept. 21, 2021) (emphasis added)).[4]

       To be sure, Defendant's argument has some appeal. In *Exby-Stolley*, the Tenth Circuit contrasted failure to accommodate claims with disparate treatment claims, explaining that the latter claim requires affirmative adverse-employment-action, whereas the former claim undoubtedly does not. 979 F.3d at 797 ("[D]isparate-treatment claims concern discrimination in the form of an *action* . . . .") (emphasis in original). Thus, it seems peculiar that a discrimination claim could be based on an alleged failure to accommodate, since those claims allege discrimination in the form of *inaction*. *See id.* ("On the other hand, because failure-to-accommodate claims concern discrimination in the form of a failure to meet an affirmative obligation, there is no action that must be shown to have been taken with any particular intent.").

---

[4] Defendant also cites three out-of-state cases to support its theory that a discrimination claim cannot be predicated on a failure to accommodate claim. (*See* ECF No. 112 at 8.) But only one of them arguably supports its position. *See Dressel v. Safeway, Inc.*, 2020 WL 5880860, at *7 (D. Md. Oct. 2, 2020) (holding that "the dereliction of [the duty to engage in the interactive process] does not give rise to a claim apart from one of failure to accommodate."). And even were the Court persuaded by this case's reasoning, the Court still could not follow it given the on-point Tenth Circuit caselaw on this issue. (*See* ECF No. 112 at 8.)

15

In any event, the Court is unaware of subsequent Tenth Circuit caselaw overruling or otherwise abrogating *Aubrey*'s conclusion that a discrimination claim can be based on an employer's failure to accommodate an employee's reasonable accommodation request, so the Court is bound to follow it. *See United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023) (declaring that it is a higher court's prerogative to overrule its precedents). And notably, Defendant points the Court to no such authority either. Hence, the Court rejects Defendant's argument that its alleged failure to accommodate is incompatible with Plaintiff's discrimination claim. *See Dixon v. Bd. of Trustees of Metro. State Univ. of Denver Colorado*, 2023 WL 11862296, at *7 (D. Colo. Oct. 27, 2023) (allowing intentional discrimination claim to proceed that was based on defendant's failure to accommodate); *see also Mullen v. Commissioners for Adams Cnty., Colorado*, 2022 WL 1266618, at *10–11 (D. Colo. Apr. 28, 2022) (same).

That leaves Defendant's second argument that the record does not support the Recommendation's conclusion that Defendant's reasons for discriminating against Plaintiff—*i.e.*, the reasons why Defendant allegedly failed to accommodate Plaintiff's disability by scheduling her to return to her "former position" on June 7, 2021—can plausibly be viewed as pretextual. (*See* ECF No. 102 at 23 ("The court finds that Ms. Beard has adduced sufficient evidence to create a triable issue regarding pretext . . . .").) The standard for pretext is as follows:

> A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision. This is often accomplished by revealing weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.

16

*Aubrey*, 975 F.3d at 1015 (quoting *Lincoln*, 900 F.3d at 1193); *see also Davis*, 2023 WL 8757073, at *6 (to show pretext, a plaintiff "must come forward with evidence that [the defendant] didn't really believe its proffered reason[ ] for action and thus may have been pursuing a hidden discriminatory agenda.") (citation omitted).  "Typically, a plaintiff establishes pretext with evidence that: (1) the defendant's stated reason for the adverse employment action was false; (2) the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) the defendant treated the plaintiff differently from other similarly[ ]situated employees who violated work rules of comparable seriousness."  *Id.* (citation omitted).

       Initially, the Court notes that it is unclear what specific reasons Defendant posits in its objection for why it scheduled Plaintiff to work on June 7, 2021, despite her request to meet with her doctor on June 15, 2021.  Instead of asserting legitimate, non-discriminatory reasons for doing so, Defendant recycles its arguments that (1) Defendant repeatedly attempted to contact Plaintiff for months with respect to accommodating her disability and (2) "it is beyond dispute that Brink's did not terminate Beard's employment until over two years [sic] later, affording her more than ample opportunity to submit accommodation requests that never came."  (ECF No. 112 at 9–10.)

       But these points do not call into question the Recommendation's conclusion that Plaintiff adduced sufficient evidence of pretext.  Neither do the three reasons Defendant raised in its summary judgment papers: "(1) Ms. Beard failed to return to work despite the May 2021 Release; (2) she did not provide any written restrictions from any doctor in the May/June 2021 timeframe for Brink's to consider; and (3) she 'dogged[ly]' refused

17

to engage in the interactive process with Rice-Minor." (ECF No. 102 at 23.) The Recommendation dispensed with each of these reasons, explaining that (1) Defendant's reliance on the May 2021 Release "is tenuous" because the doctor gave Plaintiff a full-duty release per her request, not based on some improved medical condition; (2) Plaintiff's failure to supply written accommodations for Defendant to consider was of Defendant's "own contrivance" since it "denied her request for just a few more days' time that would have enabled her to provide the restrictions it now faults her for omitting"; and (3) record evidence supports Plaintiff's argument that she repeatedly tried to engage in the interactive process. (Id. at 24–25.)

Simply put, the Recommendation's analysis on these points is reasonable. Each of these explanations tends to reveal "weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason[s], such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Aubrey*, 975 F.3d at 1015. Significantly, Defendant's objection does little to meaningfully refute these points.

Given all this, the Court overrules the objection and adopts the Recommendation in full with respect to the discrimination claim. *See Wirtz*, 274 F. Supp. 2d at 1202 ("Summary judgments should seldom be used in employment discrimination cases. Employment discrimination cases often turn on the employer's intent, and the courts generally consider summary judgment inappropriate in deciding such questions of intent."); *see also Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995) ("Judgments about intent are best left for trial.").

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant's objection (ECF No. 112) to the Recommendation (ECF No. 102) is OVERRULED and the Recommendation is ADOPTED IN FULL;

2. Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART as set forth more fully in the Recommendation (ECF No. 76) and in the decision and discussion above;

3. Plaintiff's motion for summary judgment is DENIED (ECF No. 78); and

4. The case remains set for a Final Trial Preparation Conference on **September 12, 2025**, and a three-day jury trial to begin on **September 29, 2025**.

Dated this 23rd day of January, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge